UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                        **Hon. Hugh B. Scott**

                  v.                      11CR27A

                                        **Report &**
                                        **Recommendation**

Stevie Coates,
                      Defendant.

Before the Court is the defendant's omnibus motion for various types of pretrial relief in this matter. (Docket No. 25 ).[1]

**Background**

On January 19, 2011, the defendant Stevie Coates ("Coates") was indicted by the Grand Jury on charges that he attempted to posses and distribute a controlled substance in violation of 21 U.S.C. §846 [Count 1]; attempted to import controlled substances in violation of 21 U.S.C. §846 [Count 2]; and smuggling goods into the United States in violation of 18 U.S.C. §1461 [Count 3]. (Docket No. 11).

Coates seeks to dismiss the indictment on the grounds that the pills that were discovered under the back seat of his car turned out to be caffeine, and not any controlled substance. (Docket

---

[1] The discovery issues raised in the motion are the subject of a separate Decision & Order.

No. 25 at page 47). In addition, the defendant seeks to suppress the statements he made upon his arrest. (Docket No. 25 at page 4).[2]

A suppression hearing was held on October 12, 2012. Special Agent Jason Siuda of Homeland Security Investigations ("HSI") testified that he was summoned to the Lewiston Bridge on October 31, 2010 after a car being driven by Coates was inspected and found to contain what were believed to be over 6000 ecstasy pills. (Docket No. 38 at page 12). It appears that an individual named Jose Martinez was a passenger in the car with Coates. Because there was an outstanding warrant for an individual named Jose Martinez, and because the individual in the car with Coates had the same name and birth date as the person identified in the warrant, the car was sent to secondary inspection for further investigation. (Docket No. 38 at page 37). Martinez's finger prints were taken, and while the agents were waiting confirmation as to whether this Jose Martinez was the person wanted by the warrant[2], the agents inspected Coates 2003 Honda Accord. (Docket No. 38 at page 13). Agents inspecting the vehicle discovery what they believed to be illegal "ecstacy tablets" under the back seat in the car. (Docket No. 38 at page 37). Siuda testified that he understood that the pills were field tested, resulting in a positive finding for "MDMA." (Docket No. 38 at pages 15, 39-40). The agents did not make Coates aware of the fact that they had found the pills. Instead, the agents replaced the contraband with

---

[2] The defendant's motion papers also included a motion to suppress any evidence obtained as a result of the search of his vehicle at the Lewiston Bridge. (Docket No. 25 at page 6). During the suppression hearing, however, the defendant agreed that the hearing would be limited to the issue of the voluntariness of Coates statements, and that the search of Coates vehicle at the border crossing was legal. (Docket No. 38 at page 5).

[2] The Jose Martinez in the car with Coates was not the person for whom the warrant had been issued. (Docket No. 38 at page 37).

plastic pellets and then allowed the Coates (and Martinez) defendant to leave the Port of Entry area so that they could follow him in what is called a "cold convoy." (Docket No. 38 at page 14). Siuda stated that Coats was observed making a stop at a diesel gas station, and then a gas station in the parking lot of a Tops Market on Niagra Falls Boulevard. At that time, Coates pumped gas into his car, threw a plastic bag into a trash can[3], and then he opened the rear door of the car. At that point, the agents moved in and arrested both Coates and Martinez, and took them back to the Lewiston Bridge. (Docket No. 38 at pages 16-18). Once they were back at the Lewiston Bridge, Coates and Martinez were placed in separate interview rooms. Siuda and HSI Special Agent Kat Lantzy interviewed Coates. (Docket No. 38 at page 19). Siuda stated that he asked Coates some biographical questions and then read him his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966) from an advice of rights form. (Docket No. 38 at page 20; Exhibit 8). According to Siuda, he read the rights to Coates verbatim; Coates indicated that he understood his rights; Coates initialed each paragraph of the rights form and then signed the form. (Docket No. 38 at pages 21-22). Notes taken by Lantzy reflect that in addition to basic biographical information, Coates was also asked why he was in Canada and where he had been prior to being read his Miranda rights. (Docket No. 38 at page 59). In this respect, Coates purportedly told Siuda and Lantzy that he went up to his cousin's house in Brampton, Ontario for a birthday party; that he stayed over night; that when he got up in the morning he noticed that someone had taken his car keys; and that he eventually left his cousin's house to return to the United States at approximately 2:30 p.m. that afternoon. (Docket No. 38 at page 23). After being read his Miranda rights, Coates was

---

[3] After arresting Coates, the bag was eventually retrieved from the trash can but determined to have no evidentiary value. (Docket No. 38 at page 44).

asked about the pills found in the car. According to Siuda, with respect to all such questions, Coates would only state to Siuda: "I don't know what you're talking about." (Docket No. 38 at page 24).

It is undisputed that the tablets in the vehicle, upon laboratory analysis, turned out not to be ecstacy, but were determined to be caffeine.

**Suppression of the Statements**

The defendant asserts that there was insufficient probable cause to stop and arrest Coates in the Tops parking lot and that the plaintiff did not intelligently waive his Miranda rights. (Docket No. 25 at pages 4-6).[4] The defendant's argument that the agents lacked probable cause to arrest him is based upon the fact that the pills found in the car, upon laboratory testing, turned out to be caffeine and not ecstasy. However, the government argues that because the pills field tested positive and were stamped to look like ecstasy pills (Docket No. 38 at page 9), the police officers reasonably believed that the pills were a controlled substance.[5] The record reflects that the agents discovered over 6000 pills (which field tested positive for MDMA), were stamped to appear as ecstasy pills, and were secreted under the back seat of a car driven by the defendant. Under these circumstances, probable cause existed to arrest the defendant. See United States v. Marihart, 492 F.2d 897, 900 n. 4 (8th Cir.1974) ("[I]f the officer reasonably believes facts which

---

[4] Despite requesting, and being provided with 7 extensions of time (Docket Nos. 40, 42, 44, 46, 49, 51 and 52), the defendant has not filed a post-hearing brief in this matter.

[5] The Court notes that the charges in Count 3 are based upon the illegal importation of caffeine pills. The defendant does not argue that probable cause was lacking with respect to this charge.

facially indicate a crime has been committed, then even if mistaken, she has probable cause for believing a crime has been committed."); United States v. Wix, 2012 WL 2160562 (W.D.Ky.,2012) (officers mistaking multi-gallon bottles as part of methamphetamine lab did not invalidate warrant); United States v. Harris, 2009 WL 3055331 (N.D.Ill.,2009)(Subsequent laboratory testing which revealed that the white substance was soap did not negate probable cause. The agents were mistaken, but based on their training and experience, they believed that the substance resembled pressed cocaine. They would have been entitled to rely on that belief in applying for a warrant, and such belief would certainly have supported a finding a probable cause); see also Illinois v. Rodriguez, 497 U.S. 177, 186, (1990) ("Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." (citation and quotation marks omitted)).

      With respect to whether the defendant's statements were made upon a voluntary and knowing waiver of his rights, the record reflects that after Coates was arrested, he was brought back to the Lewiston Bridge and was interrogated by Siuda and Lantzy. The record also reflects that Coates was advised of his Miranda rights, and that he acknowledged that he understood those rights by initialing each right and signing the advice of rights form. However, Siuda acknowledged that some of the questioning of Coates took place *prior* to Coates being read his Miranda rights. Siuda also acknowledged that some of the pre-Miranda questions asked went beyond basic demographic information but were related to the criminal investigation, such as questions relating to why he went into Canada and what he did while he was there. (Docket No.

38 at page 61). There is no dispute that Coates was in custody at the time such questions were posed. The statements by Coates relating to his activities in Canada made post-arrest, but pre-Miranda, should be suppressed. The record does not reflect any basis to suppress statements made by Coates after he received his Miranda warnings. Also, to the extent that Coates answered questions relating to his activities in Canada, prior to his arrest, as part of the routine border inspection process, those statements also need not be suppressed.

In sum, the defendant's motion to suppress statements should be granted in part and denied in part, consistent with the above.

**Dismissal of the Indictment**

Coates' initial moving papers seek the dismissal of the indictment based upon the fact that the pills discovered in his car turned out to be caffeine pills, not ecstasy pills. Thus, the defendant argues he cannot be charged with *attempting* to possess or import a controlled substance. A person can be charged with attempted possession of a controlled substance when the person **believes** the substance to be an illegal drug even though subsequent testing reveals that the material is not a controlled substance. United States v. Steward, 16 F.3d 317, 320, n.4 (9th Cir.1994) (finding that a defendant could be convicted for attempted sale of a controlled substance based upon his completed sale of a non-controlled substance which he believed to be controlled)[6]; United States v. Garcia, 89 F.3d 362, 366 (7th Cir.1996)(the government need not

---

[6] The Court held: "We can only say that generally a defendant should be treated in accordance with the facts as he supposed them to be. The fact that the pocket was empty should not insulate the pickpocket from prosecution for an attempt to steal." Steward, 16 F.3d. at 320, n.4.

demonstrate that the defendant attempted to possess actual cocaine; the issue was whether the defendant *believed* that he was buying cocaine, not whether he actually was buying cocaine); United States v. Hakimi, 832 F.Supp.2d 168 (N.D.N.Y. 2011)(Although the government need not prove that the defendant knew of the exact type or quantity of the drugs, it must establish that he *believed* the material he was trying to possess was some type of controlled substance.).

The motion to dismiss the indictment should be denied.

**Conclusion**

The defendant's motion for suppression and dismissal should be granted in part and denied in part consistent with the above.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v.

Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
July 29, 2013