UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

UNITED STATES OF AMERICA


                    v.                          DECISION AND ORDER
                                                    11-CR–27

STEVIE COATES,

                            Defendant.

═══════════════════════════════════

## INTRODUCTION

Before the Court is defendant Stevie Coates' objections to Magistrate

Judge Scott's Report and Recommendation (Dkt. No. 54) and appeal from

Magistrate Judge Scott's Decision and Order (Dkt. No. 55).  For the following

reasons, and for the reasons set forth in Magistrate Judge Scott's Report and

Recommendation and Decision and Order, the Magistrate Judge's findings are

adopted in their entirety.  Defendant's motion to suppress statements is granted

in part and denied in part, and his motion for a bill of particulars is denied.

## RELEVANT FACTS

Defendant is charged with attempt to possess and distribute a controlled

substance in violation 21 U.S.C. §846; attempt to import controlled substances in

violation of 21 U.S.C. §846; and smuggling goods into the United States in

violation of 18 U.S.C. §1461.  The matter was referred to Magistrate Judge Hugh

B. Scott for supervision of all pre-trial proceedings.

Defendant made various discovery related and other non-dispositive motions, including a request for a bill of particulars.  Defendant also moved to suppress the statements he made at the time of his arrest.  A suppression hearing was held before Magistrate Judge Scott.  The only witness to testify was Special Agent Jason Siuda of Homeland Security Investigation.  The Magistrate Judge credited the following facts testified to at the hearing.

Agent Siuda was called to the Lewiston Bridge on October 31, 2010, after a car driven by defendant was found to contain approximately 6,000 pills of what officers stationed at the Bridge believed to be Ecstasy.  The car was initially stopped because defendant's passenger, Jose Martinez, had the same name and birth date as an individual with an outstanding warrant.  While the officers waited for confirmation regarding the warrant, they searched the car.  They discovered the 6,000 pills of what they believed to be Ecstacy under the back seat.  The pills were stamped in a manner consistent with other Ecstacy tablets, and a field test resulted in a positive finding for MDMA.

The officers did not inform defendant and Martinez that they had discovered the pills.  Instead, the officers replaced the tablets with plastic pills and followed them in a "cold convoy".  Defendant and Martinez were ultimately arrested at a gas station on Niagara Falls Boulevard in Niagara Falls, New York. They were taken back to the Lewiston Bridge for questioning, and placed in separate interview rooms.

Agent Siuda testified that he began by asking defendant some biographical information, and then read him his *Miranda* rights from an advice of rights form regularly used by the agents.  Defendant indicated that he understood them, and initialed the form.  Agent Siuda testified that after being read his *Miranda* rights, defendant was asked about the pills.  In response, defendant stated "I don't know what you are talking about."  During the hearing, it was later revealed that notes taken by another agent present during the interview indicated that prior to the administration of the *Miranda* warnings, defendant was asked why he was in Canada and where he had been.  Defendant stated that he went to his cousin's house in Brampton, Ontario for a birthday party, that he stayed overnight, that when he woke up he noticed someone had taken the keys to his car, and that he left to return to the United States at approximately 2:30 p.m. that afternoon.

It is undisputed that upon further laboratory analysis, it was revealed that the tablets in the vehicle were caffeine pills rather than Ecstasy.

## DISCUSSION

### *Appeal of the Decision and Order*

Defendant appeals from the portion of Magistrate Judge Scott's Decision and Order denying his motion for a bill of particulars.  Defendant argues that a bill of particulars is necessary here because he has been charged with a crime for "what appears to be innocent conduct."  (Dkt. No. 59)

In his Decision and Order, Magistrate Judge Scott provides a

3

comprehensive discussion of the case law with respect to a criminal defendant's right to a bill of particulars, as well as a thorough analysis of why defendant is not entitled to one in this case. (Dkt. No. 55) Pursuant to 28 U.S.C. §636(b)(1)(A), the district court "may reconsider any pretrial matter under this subparagraph (A), where it has been shown that the magistrate's order is "clearly erroneous or contrary to law." Here, there has been no showing that Magistrate Judge Scott's denial of defendant's request for a bill of particulars is clearly erroneous or contrary to law. Therefore, defendant's appeal is denied.

### *Objections to the Report and Recommendation*

With respect to defendant's motion to suppress statements made at the time of his arrest, the Magistrate Judge found, after evaluating the hearing testimony, that defendant knowingly and voluntarily waived his rights under *Miranda*. However, the Magistrate further concluded that defendant was asked some questions relative to the investigation prior to receiving his *Miranda* warnings, including why he went to Canada and what he did while he was there. The Magistrate Judge found that there was no basis to suppress statements made by defendant after he was given *Miranda* warnings, but recommended suppressing the statements made by defendant prior to the administration of *Miranda* warnings.

Pursuant to 28 U.S.C. §636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which

objections have been made.  Defendant argues that since Agent Siuda was not clear as to which statements were made prior to the administration of *Miranda* warnings, and which statements were made after, all of defendant's statements should be suppressed.  The Court does not agree.

Agent Siuda initially testified that he asked defendant's pedigree information, read defendant his *Miranda* rights, and then began questioning defendant about the criminal investigation.  However, during cross-examination, counsel for defendant asked Agent Siuda about contemporaneous notes of the interview taken by another agent, which seemed to indicate that defendant was asked some questions prior to the administration of *Miranda* warnings.  Siuda then clarified his prior statements.  He testified that prior to administering *Miranda* warnings, he asked questions about the circumstances surrounding defendant's trip to Canada.  During re-direct, Agent Siuda testified that any questions about the items found in defendant's car were asked post-*Miranda*.

This testimony is consistent with the Magistrate Judge's recommendation to grant in part, and deny in part, the motion to suppress.  Further, the Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings.  *See Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) ("[A] district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the

witness testify before the judge.") (quoting *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999); *see also Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989) ("Had the district court rejected the magistrate's conclusions regarding the credibility of the central witnesses without hearing live testimony from those witnesses, troubling questions of constitutional due process would have been raised.").  While defendant argues that Agent Siuda was not clear as to when certain statements were made, the Magistrate found, after hearing all of the testimony, that Agent Siuda was clear about when the respective statements were made.  Specifically, questions and statements made regarding the circumstances surrounding defendant's trip to Canada were made pre-*Miranda* and will be suppressed, while questions and statements about the pills were made post-*Miranda* and are admissible.

Defendant further argues that when an initial statement is improperly obtained without *Miranda* warnings, a defendant's statement may be excluded where the officers employed a "question first, *Mirandize* later" strategy.  The Government contends that this issue was not raised before the Magistrate Judge, and therefore should not be considered by this Court in absence of a new hearing.  The Court has evaluated defendant's objections in light of the hearing transcript, and finds that a new hearing is not necessary to resolve this issue.

Officers are not permitted to employ a "question first" strategy, in which they deliberately withhold *Miranda* warnings in the midst of a coordinated and

6

continuing interrogation.  *Missouri v. Seibert,* 542 U.S. 600, 604-11 (2004).

However, this rule does not apply to all circumstances where warnings are

delivered after some questioning has been conducted.  Instead, in order to

determine whether "warnings delivered midstream" can be effective, the Supreme

Court cites to the following five factors to be considered by the court: "(1) the

completeness and detail of the questions and answers in the first round of

interrogation; (2) the overlapping content of the two statements; (3) the timing and

setting of the first and the second; (4) the continuity of police personnel; and (5)

the degree to which the interrogator's questions treated the second round as

continuous with the first."  *Id*. at 620.  The Second Circuit instructs district courts

to use an objective "totality of the circumstances test, under which the

government has the burden of proof to determine whether a two-step

interrogation by the police was deliberate."  *United States v. Carter,* 489 F.3d 528

(2d. Cir. 2007).

    While the timing and setting of the questions were the same, and the same

agents were present, the Court does not find, based upon the hearing transcript,

that the officers engaged in a deliberate, two-step, "question first, *Mirandize*

later", strategy.  In *Seibert*, the Supreme Court noted that the "unwarned

interrogation was conducted in the station house, and the questioning was

systematic, exhaustive, and managed with psychological skill...[w]hen the police

were finished there was little, if anything of incriminating potential left unsaid."

542 U.S. at 617.  The *Seibert* Court further explained that "these circumstances must be seen as challenging the comprehensibility and efficacy of the *Miranda* warnings to the point that a reasonable person in the suspect's shoes would not have understood them to convey a message that she retained a choice about continuing to talk."  *Id*.

That is not the case here.  Here, the questions asked prior to the *Miranda* warnings were brief and related only to the circumstances surrounding defendant's trip to Canada.  While these questions related to the criminal investigation and were asked during custodial interrogation, they are also questions routinely asked at the border immediately following requests for pedigree information.  Indeed, the hearing transcript reflects that after defendant was asked pedigree questions and the reasons for his trip to Canada, he was administered *Miranda* warnings before being questioned about the pills in the car.  The pre-*Miranda* questioning was not systematic or exhaustive, the initial questions were neither complete nor detailed, and there was little overlap between the two sets of questions.  For these reasons, the Court finds no basis in the record to conclude that Agent Siuda was attempting to gain a confession prior to administering *Miranda* warnings by utilizing a deliberate two-step interrogation technique.  The Court also finds that a reasonable person in defendant's shoes would have understood the import of *Miranda* warnings at the time they were given.  *See Carter*, 489 F.3d at 535-36 (upholding the district's court decision not

to suppress post-*Miranda* statements where defendant was asked only one question about the narcotics prior to administration of the warnings and therefore "there was almost no overlap between this statement and the full confession he gave after he received the warnings.")

## **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in Magistrate Judge Scott's Report and Recommendation and Decision and Order, defendant's motion to suppress statements made at the time of his arrest is granted in part and denied in part, and defendant's motion for a bill of particulars is denied.  The parties are instructed to appear before the Court on April 15, 2014 at 9:00 a.m. for a status conference and/or meeting to set a trial date.


SO ORDERED.


____*Richard J. Arcara*_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  April 14, 2014